## Ewell v. Hauser, et al.

(Decided October 28, 1910.)

### Appeal from Laurel Circuit Court.

Land—Locating Lines and Corners—Only One Corner Standing— Courses and Distances Mentioned.—It is almost impossible, after the lapse of many years, to locate the exact lines of a survey

when there is only one natural object standing as a corner. It is the settled practice, in locating lines, to begin at a known corner, where the other corners are lost, and locate the other corners by the courses and distances mentioned in the survey

H. C. CLAY for appellant.

HAZELWOOD & JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The amount of land involved in this controversy is so small, being 27-100 of an acre, and its value so trifling, that it is evident that the appellant Ewell was not influenced by pecuniary considerations to bring this suit or to prosecute this appeal from a judgment against him. But, whatever the motives that induced the litigation, the case is properly here, and we will dispose of it on its merits.

In 1888 the appellee Hauser purchased from W. B. Catchings a tract of land containing 15 acres, more or less. The deed describes the land as:

"Beginning at a stake on the Sublimity road at or near J. C. McKee's corner, thence S. 79 W. 23 1-2 poles to a stake on said road; thence N. 27 W 53 poles to a stake; thence N 10 E. 7 poles to two little white oaks; thence same course 6 poles to a stake; thence S. 80 E. 43 poles to a stake near the branch; thence S. 38 1-2 E. 33 poles to a stake in the road; thence with Sublimity road 27 1-2 poles to the beginning."

In 1892 Catchings sold to Ewell a tract of land adjoining on the north the land previously conveyed by Catchings to Hauser, and in 1890 Catchings sold to Parman a tract of land also adjoining on the north the land of Hauser. Parman conveyed this land to Mrs. Brown, and in 1897 Mrs. Brown conveyed it to Ewell. The result of the ownership of these two tracts was to give Ewell title to all the land that adjoined on the north the land of Hauser. The strip of land in controversy lies on the north line of Hauser's land, and it is the location of his north line that is in dispute. The deeds under which Ewell claims title calls for Hauser's line on the north, and so the question at issue in the case turns upon the location of the line in Hauser's deed "S. 80 E. 43 poles to a stake near the branch."

The evidence shows that the courses and distances in the deeds made to Ewell cover the land in dispute, but

as these deeds call for the lines in the deed made to Hauser, and one of them for Hauser's fence, the correct lines in Hauser's deed control the situation.

When the land was surveyed, the line in dispute run through uncleared or wooded land, and it will be observed that there are no permanent or natural corners in Hauser's lines except the one calling for "two little white oaks," all the others being stake corners. It is Ewell's contention that there are and were three marked trees on Hauser's north line, to-wit: A black oak, corner tree, and a white oak and a pine, line trees, and that these trees—especially the black oak—should control the location of the disputed line. But we are unable to perceive how the location of these trees or the fact that they are now marked, throw any light on the location of Hauser's line, because there are no calls for trees in his north line—it is a stake line. There is no satisfactory evidence that marked, throws any light on the location of Hauser's line, was run. If these trees were on the line when it was surveyed to Hauser, it is singular that the field notes of the surveyor do not call for these trees or some of them in place of stakes. If these trees or any of them were in the line it is fair to assume they would appear in some way in the field notes of the surveyor, and the fact that they are not mentioned in the survey is persuasive if not conclusive evidence that they were not in Hauser's line as surveyed to him. That they were not in his line is borne out by the testimony of some of the surveyors who testify that the line of Hauser's survey runs a few feet beyond the black oak claimed by Ewell to be a corner tree. Hauser testified that both he and Catchings were with the surveyors when the land purchased by him was surveyed, and that he remembers distinctly the two little white oaks mentioned in his deed, that they were marked as line trees and grew out of the same stump, and one of them is now standing. At the time he purchased, there was no fence on the disputed line, but he says that in the summer of 1888 he built a fence about half the distance on the line in controversy and on his own land, and between 1890 and 1894 he completed the fence on the line on his own land, and that the fence now standing and which Ewell claims is over on him, is on his own land. He also testified that the oaks and pine tree that Ewell claims are line and corner trees, were passed and noticed by them in making the

survey, but as the lines did not touch these trees they were not marked as line or corner trees. The surveyor who surveyed the land to Hauser is dead, and Catchings does not remember the corner trees or lines. As it is very well established by the evidence that the two little white oaks were in the line of the survey as actually located on the ground when the land was sold by Catchings to Hauser, and as these trees are the only natural monuments in the line of survey, it was proper in locating Hauser's line to begin at these two little white oaks and locate the lines of Hauser's survey with them as the beginning corner. This the surveyors who located Hauser's line did. It is true that there is some conflict in the evidence as to the exact location of these two little white oaks and it appears that when Catchings sold to Hauser, these two trees grew out of one stump, but afterwards one of them was cut down or disappeared in some way. But the weight of the evidence tends to show that one of the two little white oaks mentioned in Hauser's survey is yet standing. In running the lines of the survey, with this little white oak as a beginning corner, according to the courses and distances mentioned in the survey, the land in controversy is within Hauser's boundary. It is of course almost impossible to locate after the lapse of many years the exact lines of a survey when there is only one natural object standing as a corner. But, however unsatisfactory it may be to establish lines with only one corner in the original survey to be governed by, it is often the best that can be done, and it is the settled practice in locating lines to begin at a known corner and treat it as the beginning corner when the other corners are lost, and to find and locate the other corners by the courses and distances mentioned in the survey. There is, as we have said, difference of opinion between the surveyors as to the correct location of the line in dispute, but we are inclined to the opinion that the weight of the evidence shows that it is where Hauser contends, and as the lower court so found, the judgment must be affirmed.