## Sullivan, et al. v. State Board of Charities and Corrections, et al.

(Decided November 11, 1921.)

### Appeal from Fayette Circuit Court.

1. **Infants—Juvenile Delinquents.**—Under the provisions of subsection 11 of section 331e, Kentucky Statutes, the county courts have the discretionary power to order a delinquent child returned to its home at any time it may be done consistent with the public good and the good of the child; and the governing board of the houses of reform to which such child has been committed are bound to obey such orders of the court.

2. Infants—Juvenile Delinquents—Houses of Reform.—Subsection 17 of section 2095b, Kentucky Statutes, in so far as it confers upon the governing board of houses of reform with the consent of the Governor to discharge and recall children committed to such institutions under the provisions of section 331e, Kentucky Statutes, is repealed.

3. Infants—Juvenile Delinquents—Houses of Reform.—The provisions of section 3828, Kentucky Statutes, refer only to such inmates of houses of reform as are confined there under convictions of crime by criminal courts of the state and not to children committed thereto by order of the juvenile courts under section 331e, Kentucky Statutes.

R. S. CRAWFORD for appellants.

CHAS. I. DAWSON, Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

In October, 1920, the appellant, then fifteen years of age, upon a trial in the Fayette county court under section 331e, Kentucky Statutes, was adjudged to be a delinquent child and committed "to the care of the Kentucky House of Reform and to remain under the care and control of said institution and subject to its rules until he arrives at legal age or until discharged by said juvenile court or by due process of law."

On June 28, 1921, J. M. Sullivan, the father of appellant, entered a motion in the Fayette county court for a modification of the judgment and order committing appellant to the house of reform and upon a hearing of that motion the following order was entered:

"This cause came on for hearing on motion of the father of the defendant herein, and it appearing that the said defendant's parents were not notified of the hearing at which said defendant was convicted, and the following judgment entered:

"And further appearing to the court that the defendant has been confined in the Kentucky House of Reform for more than eight months, and it is for the best interests of said infant defendant that the judgment herein should be suspended, and said defendant placed upon probation, it is hereby ordered that the judgment herein be suspended and the defendant be put in custody of his parents, subject to the friendly visitation of the probation officer of this court."

A copy of this order was served upon the appellees, State Board of Charities and Corrections, in which is

vested by law the management and control of the house
of reform, and the board refused to comply with the
court's order to release appellant. Thereupon appellant,
suing by his next friend, instituted this action in the Fay-
ette circuit court for a mandamus requiring appellees to
release him as directed by order of the juvenile court.
A demurrer having been sustained to his petition, same
was dismissed and he has appealed.

It is the contention of appellees that by the judgment
committing appellant to the house of reform during his
minority the Fayette county court exhausted its
powers in the matter and was without authority as was
attempted in that judgment to retain control of the case
or to enter the later order releasing appellant from the
institution and placing him in care of his parents subject
to the friendly visitation of the probation officer of the
court. Whether this is true or not, is the question for
decision upon this appeal.

Section 331e of Kentucky Statutes, enacted in 1906,
defines the terms "delinquent child," "dependent child"
and "neglected child," and confers upon the county
courts of the state as juvenile courts exclusive jurisdic-
tion to try and dispose of such children. Though not en-
tirely accurate, for our present purposes delinquent
children may be described as such boys seventeen years
of age and under and girls eighteen years of age and
under as upon trial are found to have exhibited crimi-
nal or incorrigible dispositions and tendencies, while
dependent and neglected children are treated as a single
class and are such children of like ages as because of im-
proper environment or the absence of proper paternal
control are liable to develop such dispositions and ten-
dencies.

Subsection 7 of the act prescribes what disposition
the court may make of a delinquent child, while subsec-
tion 9 thereof provides for the disposition of dependent
or neglected children. In any case the child may be al-
lowed to remain in the home of its parents or
other suitable persons subject to the friendly visi-
tation and supervision of the probation officer of
the juvenile court, but the provisions for the com-
mitment of such child to private or public institutions
are somewhat different. Delinquent children may be
committed by the court to the house of detention pro-
vided for by the act, the state house of reform for boys

or girls as the case may be or to any institution that has been or may be provided by the state, county or city for the care of delinquent children, or "to any association that will receive them embracing in its objects the care of neglected, dependent or delinquent children." Dependent or neglected children may be committed only to some "association, society or corporation willing to receive them embracing in its objects the care of neglected, dependent or delinquent children; provided, however, that the court shall not commit any dependent or neg-. lected child within the meaning of this act to any association, society, or corporation receiving delinquent children unless suitable provision is made by such association, society or corporation for separating delinquent from neglected or dependent children."

As to dependent and neglected children, the juvenile court by subsection 9 is given express authority after commitment to set aside, change or modify such order; but as to a delinquent child it is provided by subsection 7 that the governing board of the institution to which it has been committed may release it with the approval of the county court or the court may release it upon recommendation of the board, and there is no express authority in subsection 7 for the court without the concurrence of the governing board of the institution to which the child has been committed to order a release. If these were the only provisions of the act the contention for appellees would doubtless be sound; since in this case the governing authorities of the house of reform to which appellant was committed neither recommended nor approved the order of release. However, subsection 11 of the act provides that:

"Whenever it shall appear to the court in the case of any child under this act taken from its home that the home of such child or of its parents or former guardian or custodian is a suitable place for such child and that such child could be permitted to remain or ordered to be returned to said home consistent with the public good or the good of such child the court may order such child returned to its home under probation or otherwise, it being the intention of this act that no child shall be taken from or kept out of its home or away from its parents or guardian any longer than is reasonably necessary to preserve the welfare of such child and the interests of the state."

This subsection very clearly applies to all classes of children considered by the act and just as clearly confers upon the juvenile court the power to order any such child *to be returned to its own home* at any time when in the court's sole discretion that may be done "consistent with the public good and the good of such child." This construction of this subsection does not, as counsel for appellees contend, render meaningless the provisions of subsection 7 for releases by the concurrent action of the officials of the house of reform and the county judge, but simply restricts same to releases for other reasons than to return the child to its own home when, as suggested in that subsection, the child has been reformed or when for any other reason its release is deemed advisable and it has no proper home of its own to which it can be returned. Such construction of the two subsections not only harmonizes them so as to give some effect to both, but the very effect we feel sure the legislature intended that each should have, while to construe subsection 7 as appellees contend would give no force whatever to subsection 11.

Hence if section 331e controls, the circuit court erred in sustaining the demurrer to appellant's petition and dismissing same.

But it is insisted by the Attorney General for appellees that if this act be so construed it is inconsistent with provisions for releasing inmates of houses of reform found in section 2095b and section 3828 of the Kentucky Statutes and that these last named acts must control. Section 2095b is the act providing for the establishment of houses of reform for boys and girls and in subsection 17 thereof it is provided that:

"The trustees may at any time discharge any boy or girl in the custody of such institution upon the advice of or with the consent of the Governor or of the judge of the court committing said child."

This act, however, was enacted in 1896 and consequently its provisions for the release of children from houses of reform, in so far as it is inconsistent with the provisions of section 331e thereafter enacted, was repealed thereby.

Section 3828 of the statutes was enacted in 1914 and therefore later than section 331e and it contains the provision that the State Board of Penitentiary Commissioners, whose duties and powers were conferred upon the

appellees, State Board of Charities and Corrections, by an act of 1920, "shall have power and authority with the approval of the Governor of the state and subject to the conditions, provisions and limitations of this act to parole and permit to go and remain at large outside the buildings and inclosures of the same any person that is now confined and that hereafter may be confined in any penitentiary, reformatory, house of reform or other penal institution of the state, etc." This act, however, as clearly appears from its title and terms, was intended only to apply to persons convicted of crime and confined in the named institutions in pursuance of a judgment of the criminal courts of the state.

Subsection 5 of section 331e provides that the juvenile court in any case of a delinquent child brought before it upon warrant or indictment charged with a crime, in its discretion may permit such child to be tried in the ordinary way by the criminal courts of the state, and we have held in numerous cases that the criminal courts can acquire jurisdiction of and convict of crime a child coming within the provisions of section 331e only in the manner therein pointed out, and that when so convicted they shall be confined in the house of reform during their minority and thereafter in the penitentiary if the term of imprisonment imposed upon them in a circuit court extends beyond their minority.

We are therefore clearly of the opinion that the legislature only intended to confer upon the governing board and the Governor the power to parole those convicted of crime and confined in any state penal institution under judgment of the regular criminal courts and has no reference whatever to a child committed to the custody of the house of reform by the juvenile courts under section 331e, Ky. Statutes, the prime purpose of which is to render such children immune from criminal prosecution even, except when the juvenile courts shall consider it necessary.

In accordance with the above conclusions it results that it was the duty of the appellees to release appellant as ordered by the Fayette county juvenile court and that the lower court erred in sustaining a demurrer to and dismissing the petition herein.

Wherefore, the judgment is reversed and the cause remanded for further proceedings consistent herewith.